# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOSEPH R. MARTIN**

**VERSUS**

**ROB ROY, individually and in his official capacity, ET AL.**

**CIVIL ACTION**

**NO. 20-339-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 5) filed by Defendants, Rob Roy, Chance Davis, and Beauregard Torres, III (collectively "Defendants"). Plaintiff Joseph R. Martin ("Plaintiff") opposes the motion. (Doc. 9.) Defendants filed a reply. (Doc. 12.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted.

### I.     Background

#### A.  Overview

This lawsuit arises out of an encounter between Plaintiff and two Point Coupee Parish Sheriff's Deputies. Plaintiff in this suit is Joseph R. Martin, who at the time of the encounter, was "over 70 years old, suffered with a history of heart disease, diabetes, and was not fully ambulatory." (*Petition* (*"Pet."*), Doc. 1-1 at ¶ 7.) Defendants are: (1) Rob Roy, a Pointe Coupee Parish Sheriff's Deputy, who is sued in his individual and official capacity; (2) Chance Davis, a Pointe Coupee Parish Sheriff's Deputy, who is also sued in his individual and official capacity; and (3) Beauregard Torres, III, Sheriff of Point Coupee Parish. (*Pet.*, Doc. 1-1 at ¶ 1.)

### B. Factual Allegations

The following facts are taken from Plaintiff's *Petition* (*"Pet."*), Doc. 1-1. They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

On June 12, 2019, Plaintiff travelled from Baton Rouge, Louisiana to Point Coupee Parish to visit his brother. (*Petition (Pet.*, Doc. 1-1 at ¶ 2.) Plaintiff alleges that while driving on U.S. 190, he noticed an unmarked, dark colored vehicle speeding up from behind. (*Id.* ¶ 3.) The unmarked vehicle drove directly behind Plaintiff's truck and was being operated in an erratic manner. (*Id.*)

When Plaintiff turned off U.S. 190 onto Wye Road, the unmarked car continued to follow him. (*Id.* ¶ 4.) Thereafter, a marked Pointe Coupee Sheriff's Unit, driven by Defendant Davis, pulled in behind the unmarked vehicle. (*Id.*) Plaintiff alleges that when he saw Defendant Davis turn on his police lights, he immediately pulled over and put his truck in park. (*Id.*) Defendant Roy, who was driving the unmarked vehicle, approached Plaintiff and "demanded" that he produce his license and registration. (*Id.* ¶ 5.) At the time, Defendant Roy was not in uniform and did not identify himself as a Pointe Coupee Parish Sheriff's Deputy. (*Id.*) Plaintiff alleges that he asked Roy for his identification, at which time, Roy advised that he was a Sheriff's Deputy. (*Id.* ¶ 6.)

In the interim, Defendant Davis exited his patrol car and walked to the driver's side of Plaintiff's truck, along with Roy. (*Id.*) Plaintiff then alleges that:

> When [he] reached over to his glove box on the passenger side of the truck, suddenly and without warning and while shouting, words to the effect, "I'll show you", both defendants opened the driver's side door to Petitioner's truck, forcibly pulled Petitioner out of his truck, with one officer grabbing one of Petitioner's legs and the other officer grabbing Petitioner's other leg, both defendants then deliberately yanked Petitioner's legs apart causing a serious groin injury, pulled

2

Petitioner out onto the ground causing cuts and abrasions on Petitioner's back from the asphalt, and slamming Petitioner's head to the ground and causing Petitioner to momentarily lose consciousness.

(*Id.*)

According to Plaintiff, after the officers realized they had caused him significant injuries, they handcuffed him and began discussing what crimes they could charge him with. (*Id.* ¶ 8.) Plaintiff submits "this was in an effort to cover for their deliberate injuring of [him]." (*Id.*)

Defendant Davis then placed Plaintiff in the back of his marked unit and transported him to the Sheriff's Department. (*Id.* ¶ 9.) After several requests from Plaintiff for medical assistance for his serious injuries, he was transported to Pointe Coupee General Hospital. (*Id.* ¶ 10.)

While at the hospital, Defendants electronically sought and received an arrest warrant for Plaintiff for one count of speeding and two counts of Resisting a Police Officer with Force or Violence (La. Rev. Stat. 14:108(A)). (*Id.* ¶ 10.) Plaintiff was then booked into jail. (*Id.* ¶ 11.) After being released on bond, Plaintiff sought further medical treatment for his injuries. (*Id.* ¶¶ 11–12.)

As a result of the application of "clearly" excessive force, Plaintiff suffered "severe injuries to his groin resulting in a permanent loss of gait and function, numerous cuts and abrasions resulting in permanent scarring to his back, and a head injury which caused and continues to cause brain damage." (*Id.* ¶ 13.)

Plaintiff also alleges that he was acquitted of the charge of speeding and one count of Resisting an Officer. (*Id.* ¶ 18.)  He admits that he was convicted of one count of Resisting an Officer "as more fully demonstrated in the record of the proceeding entitled: 'State of Louisiana v. Joseph R. Martin.' " (*Id.*)

As a result of the above, Plaintiff asserts the following causes of action: (1) violations of 42 U.S.C. § 1983, namely that Plaintiff was wrongfully arrested/detained and subjected to excessive force at the hands of Defendants (*id*. ¶ 16); (2) a *respondeat superior* liability claim against Sheriff Torres for Davis and Roy's tortious conduct (*id*. ¶ 15); and (3) various state law tort claims, including claims for assault, battery, negligence, intentional infliction of emotional distress, infliction of clearly excessive force, and wrongful arrest/detention (*id*. ¶ 14).

### C.  The Instant Motion

Defendants move this Court to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Defendants have two main grounds for attack: (1) Plaintiff's claims are barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994); and (2) Plaintiff fails to state a § 1983 official capacity claim.  (Doc. 5-1 at 1.)

In support of their motion, Defendants attach a portion of the transcript from Plaintiff's state court criminal trial (Doc. 5-2). The transcript includes only closing arguments and the state trial court judge's ruling from December 12, 2019.

Defendants represent that the Court may properly consider the transcript as a source outside of the Complaint because it was incorporated into the Complaint by reference and/or is a matter of which the Court may take judicial notice. (Doc. 5-1 at 10–11 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)).)

However, Plaintiff objects to the Court considering the transcript because it is not attached to his Petition. (Doc. 9 at 5.) Plaintiff also argues that Defendants are attempting to convert their motion to dismiss into a motion for summary judgment, to which Plaintiff objects and seeks an opportunity to first conduct discovery. (*Id*.)

4

In response, Defendants re-iterate that the Court may properly consider the transcript without converting the motion into one for summary judgment because Plaintiff references and incorporates the transcript into his Petition. (Doc. 12 at 1.) In support of this, Defendants cite to the Petition which states:

> Petitioner shows that he was acquitted of the charge of speeding and one count of Resisting an Officer. He shows that he was convicted of one count of Resisting an Officer, all as more fully demonstrated in the record of the proceeding entitled: "State of Louisiana v. Joseph R. Martin."

(*Id.* (citing *Pet.*, Doc. 1-1 at ¶ 18).)

Preliminarily, the Court must determine whether to consider the exhibit attached to Defendants' motion. In general, pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6)[,] ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015). There are some exceptions to this standard. On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. June 12, 2018) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008))).

As the Fifth Circuit has explained, "[i]f the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)). "[T]he mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) motion into a motion

for summary judgment." *Id.* (quoting *Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original)). A district court, moreover, enjoys a broad discretion in deciding whether to treat a motion to dismiss as a motion for summary judgment. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 280 n.6 (5th Cir. 1991).

The Fifth Circuit has recognized a limited exception to the general rules under Federal Rule of Civil Procedure 12(d) and related jurisprudence. The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Werner v. Dept. of Homeland Sec.*, 441 F. App'x 246, 248 (5th Cir. 2011); *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

Here, the Court will consider the transcript offered by Defendants in support of their motion as it is a public record of which the Court will take judicial notice and it is specifically referenced by Plaintiff in his Petition. As such, the Court will not convert Defendants' Rule 12(b)(6) motion into a motion for summary judgment.

## II.    Relevant Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).  The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### III.    Parties Arguments

#### A.  Defendants' Motion (Doc. 5-1)

Defendants begin by arguing that Plaintiff's claims for wrongful arrest and excessive force are barred by *Heck* because a judgment in favor of Plaintiff would necessarily imply the invalidity of his underlying conviction for Resisting an Officer. (Doc. 5-1 at 8.)

As to his false arrest claim, Defendants contend this claim fails because: (1) Plaintiff cannot show that there was not probable cause to arrest him on any of the crimes charged (speeding, resisting arrest with force, resisting arrest) (*id.*); (2) Plaintiff's conviction for Resisting an Officer necessarily requires a lawful arrest based on probable cause (*id.* (citing La. R.S. Section 14:108(A)); and (3) Plaintiff has not alleged that this conviction was reversed or invalidated (*id.* at 8). As such, Plaintiff cannot state a claim of for false arrest/false imprisonment and these claims are barred by *Heck*. (*Id.* at 9.)

As to Plaintiff's excessive force claim, Defendants represent that this claim squarely challenges the factual determination that underlies his conviction for resisting arrest. Defendants point out that Plaintiff was found guilty of Resisting an Officer because he refused to give Defendants his name and address. (*Id.* at 10 (citing Def. Ex. 1 at 7–8).) Then they explain that based on the allegations in the Petition:

> Plaintiff is not alleging that he refused to provide Defendants Roy and Davis with his identification, and that is why he was removed from the truck to be placed under arrest. Instead, Plaintiff is alleging that he was attempting to comply with Defendant Roy's order to produce his identification and registration, when Defendants Roy and Davis, for no reason, and without warning forcibly pulled Plaintiff from his truck onto the ground causing him serious injury. Plaintiff's suit squarely challenges the factual determination that underlies his conviction for resisting an officer. Thus, if Plaintiff prevails on his excessive force suit, he will have established that his criminal conviction lacks any basis.

(*Id*. at 11–12.) Therefore, Plaintiff's excessive force claim also challenges the validity of his conviction and is barred by *Heck*. (*Id*. at 12.)

Plaintiff's state law tort claims are likewise barred by *Heck* because they arise out of the same facts that resulted in his conviction, and the conviction has not been reversed or invalidated. (*Id*. at 12.)

Lastly, Plaintiff's § 1983 claims against Defendants Roy and Davis in their official capacity fail as a matter of law because they "are not final policy makers." (*Id*. at 12–13.)

### B. Plaintiff's Opposition (Doc. 9)

In opposition, Plaintiff asserts that *Heck* does not apply because his conviction is not invalidated by his civil claims. According to Plaintiff, his claims of excessive force and false arrest are distinct and separate from his conviction. (Doc. 9 at 6.)

As to his excessive force claim, Plaintiff argues that his allegations are sufficient to overcome *Heck* because Defendants excessive force occurred after he allegedly resisted. (*Id*. at 8.) Contrary to Defendants' argument, Plaintiff does not allege that he did not resist arrest; instead, he alleges that after the initial stop, he was violently pulled from his truck and permanently injured at the hands of Defendants. (*Id*. at 11.) Thus, according to Plaintiff, these allegations are not inconsistent with his conviction because it is possible for him to prove that Defendants used excessive force after he ceased resisting, i.e., when he refused to give his name and license. (*Id*. at 7–8, 10–11 (citing *Bush v. Strain,* 413 F.3d 492 (5th Cir. 2008)).)

Likewise, Plaintiff's false arrest and state law claims are separate and distinct from his underlying conviction for the same reasons stated above. (*Id*. at 11–12.) Again, Plaintiff emphasizes that the arrest occurred after any alleged resistance and after Defendants "violently yanked him out of his truck onto the ground." (*Id*. at 11 (citing *Pet.*, Doc. 1-1 at ¶¶ 8–11).)

Further, Defendants' initial stop of Plaintiff lacked probable cause as he was acquitted of speeding and one count of Resisting an Officer. (*Id*. at 12.)

Lastly, Plaintiff argues that he has sufficiently stated a § 1983 claim against Defendants Roy and Davis in their official capacities. In accordance with Supreme Court precedent, Defendants Roy and Davis may be liable in their official capacities even for a 'single decision' which violates Plaintiff's civil rights. (*Id*. (citing *Owen v. City of Independence*, 445 U.S. 622 (1980); *Newport v. Fact Concerts Inc.*, 453 U.S. 247 (1981); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).) Accordingly, Plaintiff's allegations that "his permanent, physical injuries were a result of defendants Roy and Davis' 'single decision' to drag [Plaintiff] out of his truck, slam his head into the ground, attempt to cover up their unlawful conduct, deny him medical attention, and arrest him" are sufficient to state an official capacity claim. (*Id*. at 12–13.)

In addition, Plaintiff's state law claims against Defendant Torres are not subject to *Monell*, since *Monell* does not apply to state law tort claims. (*Id*. at 13.) Because Plaintiff alleges that Defendants Davis and Roy tortious acts occurred while they were within the course and scope of their employment as deputies with the Point Coupee Sheriff's Office, Plaintiff's *respondeat superior* claims against Defendant Torres survive. (*Id*.)

### C.  Defendants' Reply (Doc. 12)

According to Defendant, Plaintiff misconstrues *Heck* as it applies to wrongful arrest/detention claims. (Doc. 12 at 3.) Contrary to Plaintiff's contentions, to succeed on this claim, he would have to prove that there was no probable cause for any of the crimes charged. (*Id*.) Again Defendants stress that Plaintiff was convicted of Resisting an Officer, which by definition requires a lawful arrest based on probable cause and that the criminal court judge

found as such. (*Id.* at 3–4.) Thus, if Plaintiff were successful on his false arrest claim, it would necessarily imply the invalidity his underlying conviction. (*Id.* at 4.)

Defendants also dispute Plaintiff's argument that his excessive force claim is temporarily and conceptually distinct from his conviction. (*Id.* at 4–7.) Based on Defendants' reading of the Petition, Plaintiff alleges absolute innocence as to the entire arrest encounter, not merely a divisible portion of it. (*Id.* at 7.)

Defendants maintain, "Plaintiff's claims are *not* that Defendants Roy and Davis used excessive force after he stopped resisting arrest, but that he was injured while being pulled from his truck for no reason." (*Id.* (emphasis by Defendants).) As such, this is not a case where Defendants' alleged use of excessive force occurred separate and apart from and after Plaintiff stopped resisting. (*Id.* at 8.) Rather, this case is like other Fifth Circuit cases, wherein the plaintiff alleges in his complaint that he did nothing wrong in the entire arrest encounter. Like those cases, Plaintiff's excessive force claim in this case must be dismissed under *Heck* because the allegations in his Petition are inherently inconsistent with his resisting arrest conviction.  (*Id.* at 6–7.)

As to Plaintiff's § 1983 claims, Defendants first note that the cases Plaintiff cites in support of his arguments do not stand for the propositions he cites them for. (*Id.* at 8–9.)[1] Defendants then point out that Plaintiff failed to state a § 1983 official capacity claim against them. As to Defendants Davis and Roy, Plaintiff has not alleged that they are final policymakers or decisionmakers for the Pointe Coupee Parish Sheriff's Office. (*Id.* at 9.) As to Defendant Torres,

---

[1] For example, according to Defendants, Plaintiff cites *Monell* for the proposition that *police officers,* in their official capacities are liable where a pattern of behavior arose from the execution of government's policy, but the plaintiffs in *Monell,* were employees of the Department of Social Services and the Board of Education, not police officers; *see also,* Doc. 9 at 12, citing Supreme Court cases for the proposition that there can be Section 1983 official capacity liability based on a "single decision" or "single action" which violates a plaintiff's civil rights. However, according to Defendants, these cases merely held that a Section 1983 claim may be based on a single decision attributable to the municipality under appropriate circumstances, i.e., those by municipal policymakers or the municipality, itself. (Doc. 12 at 8–9 (citing Pl. Opp., Doc. 9 at 12).)

"Plaintiff admits that he is not bringing Section 1983 claims against [him]." (*Id*. (citing Pl. Opp., Doc. 9 at 13).) Therefore, Plaintiff's § 1983 official capacity claims should be dismissed with prejudice.

Finally, Defendants argue that Plaintiff's state law claims are likewise barred by *Heck* for the reasons stated above. (*Id*. at 10.) They also take issue with Plaintiff's claims that Defendants Davis and Roy were negligent in failing to provide him with reasonable medical care. According to Defendants, this allegation is contrary to his Petition in which he alleges: "[a]fter several requests from Petitioner for medical assistance for his serious injuries, Petitioner was then transported to Pointe Coupee General Hospital." (*Id*. (quoting *Pet.*, Doc. 1-1 at ¶ 10).)

## IV.    Discussion

### A.  False Arrest and *Heck*

#### 1. Applicable Law

"In [*Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)], the Supreme Court held that a plaintiff who has been convicted of a crime cannot bring a § 1983 claim challenging the constitutionality of his conviction unless that conviction has been reversed, expunged, declared invalid, or called into question by federal habeas corpus." *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (per curiam) (citing *Heck*, *supra*).  That is, "*Heck* teaches that in a § 1983 action, if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.' " *Cano v. Bexar Cty., Texas*, 280 F. App'x 404, 408 (5th Cir. 2008) (per curiam) (quoting *Heck*, 512 U.S. at 487, 114 S. Ct. 2364).

The Fifth Circuit has "applied Heck to bar claims for excessive force, false arrest, malicious prosecution, and other claims of unlawful seizure." *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 F. App'x 578, 583 (5th Cir. 2012) (per curiam) (citing *Connors v. Graves*, 538 F.3d 373, 377–78 (5th Cir. 2008) (excessive force and unlawful seizure); *Wells v. Bonner*, 45 F.3d 90, 94–96 (5th Cir. 1995) (malicious prosecution and false arrest)).  The Fifth Circuit has also "specifically noted that false-arrest and malicious-prosecution claims challenge the existence of probable cause and, thus, by their essence are collateral attacks on a criminal judgment's validity." *Id.* (citing *Wells*, 45 F.3d at 95).  Further:

> The specific crimes charged are irrelevant if the § 1983 claims would cause a civil judgment in the plaintiff's favor to "collide" with the criminal judgment. *Wells*, 45 F.3d at 95. It also is immaterial that the plaintiff was not convicted on every count charged. *Id*. False-arrest and malicious-prosecution claims—as attacks on probable cause—"focus on the validity of the arrest." *Id*. Thus, "[i]f there was probable cause for any of the charges made . . . then the arrest was supported by probable cause," and *Heck* applies. *Id.*; *cf. Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) ("find[ing] no basis in precedent or reason" for concluding "that the probable-cause inquiry is further confined to the known facts bearing upon the offense actually invoked at the time of arrest, and that (in addition) the offense supported by these known facts must be 'closely related' to the offense that the officer invoked" (citation omitted)).

*Id.* at 583–84.

Several cases illustrate these principles.  In *Wells*, plaintiff was arrested outside of a nightclub for disorderly conduct and resisting a search. *Wells*, 45 F.3d at 92. "The disorderly conduct charge was dropped before trial.  [Plaintiff] was prosecuted and convicted on the charge of resisting a search.  This conviction was upheld on appeal." *Id.* at 93.  Plaintiff filed a § 1983 action alleging, *inter alia*, false arrest and malicious prosecution. *Id.*  The district court denied the officers' motion for summary judgment. *Id.*  The Fifth Circuit reversed based on *Heck*. *Id.* at 94–95. As to the false arrest claim, the appellate court stated:

First, [plaintiff Wells] alleges that he was subjected to a false arrest. He seeks to prove that his arrest lacked a basis in probable cause. It is immediately clear that again the rationale of *Heck* precludes his claim of false arrest. As we have noted earlier, Wells was arrested and charged with resisting a search and disorderly conduct. He was duly convicted—a conviction that still stands—for resisting a search. Although it is true that the defendant officers also charged Wells with disorderly conduct, and that Wells was not convicted on that charge, these facts are insignificant in determining whether Wells presently has a § 1983 claim for an unconstitutional arrest. The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest. If there was probable cause for any of the charges made—here either disorderly conduct or resisting a search—then the *arrest* was supported by probable cause, and the claim for false arrest fails. Thus, Wells's proof to establish his false arrest claim, i.e., that there was no probable cause to arrest either for disorderly conduct *or* for resisting a search, would demonstrate the invalidity of Wells's conviction for resisting a search. *Heck,* 512 U.S. at ——, 114 S. Ct. at 2372. Consequently, *Heck* dictates that his claim for false arrest is not cognizable in the absence of the invalidation of his conviction for resisting a search, which, as we have noted, has not occurred.

*Id.* at 95.

Likewise, in *Arnold*, the plaintiff "was arrested and charged with public intimidation of police officers and possession of marijuana. He pleaded not guilty to these charges, which were eventually dropped." *Arnold*, 100 F. App'x at 322. Later, he was charged with resisting an officer. *Id.* He was convicted and sentenced, and his charge was not overturned. *Id.* He later sued under § 1983 and also asserted a number of state law claims. *Id.* Defendants moved for summary judgment and urged *Heck. Id.* The district court granted the motion, and the Fifth Circuit affirmed. *Id.* at 322–23. In doing so, the appellate court explained:

[T]o obtain Arnold's conviction for resisting an officer, the prosecution had to prove that the officers were making a lawful arrest. La. Rev. Stat. Ann. § 14:08. The state trial judge appeared to find that Arnold resisted and interfered with two different lawful arrests-his own and Bonner's. Thus, by claiming false arrest, Arnold argues that, contrary to one finding underlying his conviction, his arrest was unlawful. This claim, then, also violates *Heck*.

*Arnold*, 100 F. App'x at 325.

14

Similarly, in *Cormier*, the plaintiff called police with a trespassing complaint, and officers were sent to the scene. *Cormier*, 493 F. App'x at 580.  Following an altercation with a homeless man, two officers issued a summons for simple battery and released the plaintiff.  *Id.* at 581.  Later, a bill of information was issued adding the charge of aggravated assault. *Id.*  Both charges were eventually dismissed, but a superseding information was then filed charging plaintiff with distributing the peace. *Id.*  He was convicted and sentenced to a fine, six months' probation, and a suspended sentence of ten days in jail. *Id.*  He appealed but lost. *Id.*

The plaintiff later brought claims under § 1983 and state law.  *Cormier*, 493 F. App'x at 581.  The district court dismissed most of the claims but concluded that the two officers falsely arrested plaintiff and contributed to malicious prosecution. *Id.* at 582.  The district court also rejected the *Heck* defense. *Id.*

The Fifth Circuit reversed, finding that *Heck* "preclude[d] [plaintiff's] claims" under § 1983 "for malicious-prosecution, defamation, and 'false-imprisonment' " (also characterized as " 'false-arrest' ").  *Id.* at 583.  The Fifth Circuit explained:

> Cormier has introduced no evidence showing that his disturbing-the-peace conviction has been reversed or otherwise called into question. Allowing Cormier to proceed with his false-arrest and malicious-prosecution claims against the officers under § 1983, then, risks "undermining the validity of his criminal conviction[ ]" because the same underlying events triggered those charges. *Connors*, 538 F.3d at 377. *Heck* thus bars those claims.

*Id.* at 584.

## 2. Analysis

In short, Plaintiff's false arrest claim is barred by *Heck*.  Again, Plaintiff was arrested for the crimes of speeding and two counts of Resisting an Officer and was convicted on one count of Resisting an Officer. *(Pet.*, Doc. 1-1 at ¶¶ 10, 18.) Plaintiff does not allege or argue that his conviction has been reversed or invalidated. As a result, Plaintiff's claims are barred by *Heck*.

Plaintiff's arguments are unpersuasive, as a successful § 1983 suit would "necessarily imply the invalidity of his conviction or sentence." *Cano*, 280 F. App'x at 408. All of the charges for which Plaintiff was arrested arose from the same underlying conduct. *See Cormier*, 493 F. App'x at 584 ("Allowing Cormier to proceed with his false-arrest and malicious-prosecution claims against the officers under § 1983, then, risks 'undermining the validity of his criminal conviction[ ]' because the same underlying events triggered those charges." (citation omitted)); *Cano*, 280 F. App'x at 408 ("Cano's conduct that gave rise to probable cause to arrest is also the conduct that forms the basis of his conviction. Therefore, because a judgment in favor of Cano would necessarily imply the invalidity of his assault conviction, *Heck* bars this claim."). Thus, contrary to Plaintiff's position, the factual basis for the Resisting an Officer conviction is not separate and distinct from the false arrest claim. (Doc. 9 at 11.); *cf. Rouse v. Ard*, No. 18-583, 2020 WL 96898, at *8 (M.D. La. Jan. 8, 2020) (deGravelles J.) (finding that the factual basis for the plaintiff's Public Intimidation conviction was not temporally and conceptually distinct from his false arrest claim.). Therefore, *Heck* applies to bar Plaintiff's claim.

This is particularly true because Plaintiff was convicted of Resisting an Officer, which necessarily requires a lawful arrest.[2] As Judge Brady stated in a similar case:

> The "core of *Heck* is a proscription against allowing a civil tort suit to cast doubt on a criminal conviction." *Faulkner v. McCormick,* 2002 WL 31465892 at 2 (E.D. La. 11/1/02) (citing *Heck,* 512 U.S. at 487). Here, [plaintiff] Foster pled guilty and was convicted of resisting an officer and remaining after forbidden. Consequently, Plaintiff's claim of false arrest under § 1983 would directly contradict her conviction because part of the conviction of resisting an officer requires that there be a lawful arrest. To succeed under this claim, Plaintiff would have to prove that the arrest was unlawful, casting doubt on the subsequent conviction of resisting arrest. "*Heck* will not permit such a conflict between civil and criminal proceeding to stand simultaneously." *Arnold v. Town of Slaughter,* 2003 WL 25739166 at 3

---

[2] *See* La. Rev. Stat. § 14:108(A) ("Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity *and authorized by law to make a lawful arrest, lawful detention, or seizure of property* . . . when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity." (emphasis added)).

(M.D. La. 2003). Allowing the Plaintiff to proceed with her false-arrest claim would necessarily attack one of the grounds for her arrest because she was charged with, and ultimately pleaded guilty to, resisting arrest. *Daigre v. City of Waveland, Miss.*, 549 Fed. Appx. 283, 287 (5th Cir. 2013). Unless and until Plaintiff's criminal conviction is expunged or invalidated, a § 1983 claim for false arrest is therefore "not cognizable."

*Foster v. City of Addis*, No. 13-702, 2014 WL 5778922, at *2 (M.D. La. Nov. 3, 2014) (Brady, J.); *see also Arnold*, 100 F. App'x at 325 ("The state trial judge appeared to find that Arnold resisted and interfered with two different lawful arrests-his own and Bonner's. Thus, by claiming false arrest, Arnold argues that, contrary to one finding underlying his conviction, his arrest was unlawful. This claim, then, also violates *Heck*.").  In sum, Plaintiff's false arrest claim "necessarily impl[ies] the invalidity of his conviction or sentence," *Cano*, 280 F. App'x at 408, so this claim is barred by *Heck*.

Further, as Defendants argue, any wrongful seizure or false arrest claim would fail for an additional reason.  *Wells* and *Cormier* state that " '[i]f there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause,' and *Heck* applies."  *Cormier*, 493 F. App'x at 583–84 (quoting *Wells*, 45 F.3d at 95).  Thus, contrary to Plaintiff's arguments, it is immaterial that there was no probable cause for the speeding and one Resisting an Officer charge. *See Rouse*, 2020 WL 96898, at *9. Under Fifth Circuit case law, because there was probable cause for the second Resisting an Officer charge, "the arrest was supported by probable cause, and *Heck* applies," *Cormier*, 493 F. App'x at 583–84 (citations and quotations omitted), and "the claim for false arrest fails," *Wells*, 45 F.3d at 95.

For all these reasons, Plaintiff's false arrest claim fails because of *Heck* and because the arrest was supported by probable cause.  Accordingly, this claim is dismissed.

### B. Excessive Force and *Heck*

#### 1. Applicable Law

Unlike for false arrest claims, *Heck* does not operate as a *per se* bar on excessive force claims, even where, as here, there has been a conviction for a crime such as resisting a police officer. *See Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008). The inquiry as to whether an excessive force claim is barred under *Heck* is "analytical and fact-intensive" and depends upon whether "the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim." *Id.* at 497–98. However, if a § 1983 plaintiff asserts absolute innocence in his complaint with regard to the entire arrest encounter, and not merely to a divisible portion of it, the Fifth Circuit holds that the claim is necessarily inconsistent and inseparable from a related conviction and therefore barred by *Heck*. *Williams v. Town of Delhi*, No. 14-00043, 2015 WL 868746, at *4 (W.D. La. Feb. 27, 2015).

For example, the *Bush* court held that an excessive force claim was separable from the plaintiff's resisting arrest conviction because the facts of that case were such that the arrest could be separated into two distinct stages-the first stage consisting of the period when the plaintiff was unrestrained and resistant and the second stage occurring when the plaintiff was handcuffed and compliant. *Bush,* 513 F.3d at 499. Because the judge in the criminal proceeding did not clearly indicate that the conviction was predicated on the plaintiff's alleged resistance in the second stage, the Fifth Circuit held that the plaintiff's excessive force claim in the second stage was separable and not barred by *Heck. Id.*

In contrast, in *Deleon v. City of Corpus Christi*, the Fifth Circuit found that *Heck* precluded the claim of excessive force because the complaint alleged a single violent encounter, throughout which an officer used excessive force on the "innocent" plaintiff, and implicitly

challenged his aggravated assault conviction. 488 F.3d 649, 656-57 (5th Cir. 2007); *see also,*

*Price v. City of Rayne*, 2016 WL 866945, at *3 (W.D. La. Mar. 3, 2016) ("[W]hen a plaintiff

contends that he did not resist arrest, that is, that he committed no offense and was instead

unjustly victimized, the Fifth Circuit has uniformly concluded that his excessive force claim is

*Heck* barred because the excessive force claim necessarily attacks the validity of the conviction

for resisting arrest."); *Daigre v. City of Waveland, Miss.,* 549 F. App'x 283, 286–87 (5th Cir.

2013) (per curiam) (unpublished) (holding that *Heck* precluded plaintiff from proceeding on her

excessive force claim solely on the basis that plaintiff alleged complete innocence in her

complaint, which was necessarily inconsistent with the validity of her subsequent resisting arrest

conviction).

Thus, to avoid dismissal under *Heck,* a plaintiff must clear two hurdles. First, the

allegations in his Complaint must not be inherently inconsistent with his resisting arrest

conviction; in other words, the plaintiff must not allege absolute innocence throughout the arrest

encounter because such a position would necessarily be contradicted by his subsequent

conviction. *Williams*, 2015 WL 868746, at *4. Second, only after overcoming the first hurdle, he

must generate factual issues that: (1) his arrest occurred in divisible stages, and (2) the officer

exerted excessive force after he was restrained and compliant. *Id.*

In *Williams v. Town of Delhi*, the court found that the plaintiff could not clear the first

hurdle because the allegations in his Complaint directly contradicted his conviction. The court

explained:

> [The plaintiff's] Complaint alleges simply that "he complied and obeyed *all* of the
> defendant, TIM CRUM's commands when he proceeded to physically assault him."
> [Doc. No. 1, Plaintiff's Complaint, ¶ 10] (emphasis added). This is the only
> reference to facts surrounding the arrest in Williams' Complaint. The statement is
> absolute and can be interpreted in only one way: Williams asserts complete
> innocence throughout the entire arrest episode, not merely in a discrete part of it.

Thus, this scenario is analogous to *DeLeon* and *Daigre* and is distinguishable from *Bush.*

*Id.* at *5.

## 2. Analysis

Similarly, Plaintiff cannot clear the first hurdle because the allegations in his Petition contradict his conviction. The Petition alleges that upon being asked for his license and registration by Defendant Roy:

> [Plaintiff] reached over to his glove box on the passenger side of the truck, [when] suddenly and without warning and while shouting, words to the effect, "I'll show you", both defendants opened the driver's side door to Petitioner's truck, forcibly pulled Petitioner out of his truck, with one officer grabbing one of Petitioner's legs and the other officer grabbing Petitioner's other leg, both defendants then deliberately yanked Petitioner's legs apart causing a serious groin injury, pulled Petitioner out onto the ground causing cuts and abrasions on Petitioner's back from the asphalt, and slamming Petitioner's head to the ground and causing Petitioner to momentarily lose consciousness.

(*Pet.*, Doc. 1-1 at ¶ 6.)

Thereafter, Defendant was handcuffed, placed in the back of Defendant Davis's police car, and transported to the Sherriff's Department. (*Id.* ¶¶ 8–9.) In effect, Plaintiff's allegations are that he did not resist arrest, but was instead attempting to comply with the officers' orders when he was attacked by the officers for no reason.

Additionally, at no point in his Petition does he allege that his claims of excessive force are separable from his resisting arrest. He does not allege that the arrest occurred in divisible stages. Instead, the Petition presents the excessive force claim as one single violent encounter to which Plaintiff was wholly innocent.[3]

---

[3] Further, to the extent the Court considers the transcript from Plaintiff's criminal trial, the Court accords it little weight. The criminal court stated in relevant part:

> The question is whether I find he – he didn't forthcomingly give the officer the information. That's what I'm finding. So, I find him guilty of resisting. **I'm not finding that there was anything as to whether the force was excessive or not because it's not relevant to this case.** I only need to find

Thus, contrary to Plaintiff's position, the factual basis for the Resisting an Officer conviction is not temporally and conceptually distinct from the excessive force claim. (Doc. 9 at 7–11 (citing *Bush*); *cf. Bush*, 513 F.3d at 500 ("Because Bush has produced evidence that the alleged excessive force occurred *after* she stopped resisting arrest, and the fact findings essential to her criminal conviction are not inherently at odds with this claim, a favorable verdict on her excessive force claims will not undermine her criminal conviction." (emphasis added)).

In sum, this case is analogous to *Williams*, *DeLeon* and *Daigre* and is distinguishable from *Bush*. Based on the foregoing, the Court finds that Plaintiff's excessive force claim is not "temporally and conceptually" inseparable from his resisting arrest conviction. Therefore, Plaintiff's excessive force claim is barred by *Heck*.

### C.  State Law Claims

Plaintiff asserts both intentional torts and negligence claims under Louisiana Civil Code articles 2315, 2316, and 2320. Defendants argue that pursuant to *Heck*, all state law claims must be dismissed. (Doc. 5-1 at 12; Doc. 12 at 10.) The Court agrees.

The *Heck* doctrine has been applied to bar state law tort claims. *See Lowell v. Ard*, No. CV 17-00187-BAJ-RLB, 2019 WL 4855150, at *3 (M.D. La. Oct. 1, 2019)*; Anderson v. City of Minden*, 2009 WL 1374122, at *5–6 (W.D. La. May 15, 2009) (citing *Roberson v. Town of Pollock*, 915 So. 2d 426, 433–34 (La. App. 3d Cir. 2005)). Again, *Heck* held that a civil tort action is not an appropriate vehicle for challenging the validity of outstanding criminal

---

whether or not he resisted by failing to give his name and address, and both officers said it, and I have no reason to believe that they're making that up.

Now, what happened after that, I guess that's why you're here, Ms. Craft, if there's going to be a civil suit and let the other court decide that. So that being said, I do find him guilty of resisting, failing to give his name and address and information when requested.

(Def. Ex. 1 at 7–8 (emphasis added).)

judgments. *Heck*, 512 U.S. at 486. Since Plaintiff's state law claims arise out of the same facts that resulted in his conviction, and the conviction has not been reversed or invalidated, Plaintiff's state law tort claims against Defendants Davis and Roy are barred by *Heck*. *Lowell,* 2019 WL 4855150, at *3.

Plaintiff's *respondeat superior* claims against Sherriff Torres for the tortious conduct of Defendants Davis and Roy under La. Civ. Code. Art. 2320 are also precluded by *Heck*. *See Williams*, 2015 WL 868746, at *9.

### D.  § 1983 Official Capacity Claims[4]

To the extent that Plaintiff brings an official capacity claim against the deputies, Plaintiff has failed to show that the deputies are policymakers as necessary to establish liability for an official capacity claim. "Under Louisiana law, it is clear that 'the Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office.' " *Spears v. Gautreaux*, No. 17-105-JWD-EWD, 2020 WL 3271993, at *20 (M.D. La. June 17, 2020) (deGravelles, J.) (citing *Causey v. Par. of Tangipahoa*, 167 F. Supp. 2d 898, 907 (E.D. La. 2001) (quoting *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 614 (E.D. La. 1998) (citations omitted)). "Indeed, 'the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff.' " *Id.* (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999); *Thomas v. Frederick*, 766 F. Supp. 540 (W.D. La. 1991) (citations omitted); *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So. 2d 669 (La. 1981)). Therefore, Plaintiff's claims against Defendants Davis and Roy in their official capacity fail as a matter of law and are therefore dismissed.

---

[4] Plaintiff concedes that he is not bringing a § 1983 claim against Sherriff Torres. (*See* Doc. 9 at 13.)

### E.  Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955).  The Fifth Circuit has further stated: "In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).

Finally, one leading treatise explained:

As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give

the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

"Thus, . . . the Court will act in accordance with the 'wise judicial practice' and general rule and grant Plaintiff[]" leave to amend. *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 642 (M.D. La. 2018).

## V.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 5) filed by Defendants, Rob Roy, Chance Davis, and Beauregard Torres, III is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff shall be given twenty-eight (28) in which to cure the operative complaint of these deficiencies.  Failure to do so will result in the dismissal of these claims with prejudice.

Signed in Baton Rouge, Louisiana, on March 18, 2021March 18, 2021.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

24