# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOSEPH R. MARTIN**

                       **CIVIL ACTION**

**VERSUS**

                       **NO. 20-339-JWD-EWD**

**ROB ROY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, ET AL.**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 22) filed by defendants, Rob Roy ("Roy"), individually and in his official capacity; Chance Davis ("Davis"), individually and in his official capacity; and Beauregard Torres, III, Sheriff of Pointe Coupee Parish ("Torres") (collectively, "Defendants"). Plaintiff Joseph A. Martin ("Plaintiff") opposes the motion, (Doc. 26), and Defendants have filed a reply, (Doc. 27). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted.

## I.    Relevant Factual and Procedural Background

### A.  Allegations of the Amended Complaint

On June 12, 2019, Plaintiff was driving from his home in Baton Rouge to Pointe Coupee Parish for his weekly visit to his disabled brother. (*Supplemental, Amending, and Restated Complaint*  ("*Am. Compl.*") ¶ 2, Doc. 20.) According to Plaintiff, he "obeyed all speed limits and traffic laws." (*Id.*)

Plaintiff was traveling on U.S. 190 in Pointe Coupee Parish when he observed an unmarked, "dark colored vehicle speeding up from behind him" (*Id.* ¶ 3.) The unmarked car had tinted windows, "drove up directly behind [Plaintiff's] truck[,] and was being operated in an erratic

manner." (*Id.*)  Plaintiff claims he was "scared the occupant(s) of the vehicle would cause him harm." (*Id.*)

Plaintiff turned from U.S. 190 onto Wye Road. (*Id.* ¶ 4.) When he did so, the unmarked vehicle followed him. (*Id.*)  After that, "a marked Pointe Coupee Sheriff's Unit, being driven by defendant Davis, pulled in behind the unmarked vehicle." (*Id.*)  When Plaintiff saw Davis activate his official lights, Plaintiff "immediately pulled over to the shoulder and put his truck in park." (*Id.*)

"At that time, defendant Roy, who was driving the unmarked vehicle, approached [Plaintiff] in his truck and demanded [Plaintiff] produce his license and registration." (*Id.* ¶ 5.) "Roy was not in uniform and did not identify himself as a Pointe Coupe Parish Sheriff's Deputy." (*Id.*)

Plaintiff asked Roy for his identification, after which point Roy advised Plaintiff he was a Sheriff's Deputy. (*Id.* ¶ 6.)  Plaintiff next asked Roy to see the radar readout. (*Id.*)  Meanwhile, Davis left his vehicle and walked to the driver's side of Plaintiff's truck with Roy. (*Id.*)

The *Amended Complaint* then states:

> [Plaintiff] reached over to his glove box on the passenger side of the truck. . . . [**Plaintiff**] **was not resisting the defendants after he reached over to his glove box and complied. After [Plaintiff] ceased any resistance, defendants then shouted[,]** "I'll show you", opened the driver's side door to [Plaintiff]'s truck, **and** forcibly pulled [Plaintiff] out of his truck, with one officer grabbing one of [Plaintiff]'s legs and the other officer grabbing [Plaintiff]'s other leg. Both defendants then deliberately yanked [Plaintiff]'s legs apart causing a serious groin injury, pulled [Plaintiff] out onto the ground causing cuts and abrasions on [Plaintiff]'s back from the asphalt, and slamming [Plaintiff]'s head to the ground and causing [Plaintiff] to momentarily lose consciousness.

(*Id.* ¶¶ 6, 6a (emphasis in original).)

Roy started to mock Plaintiff. (*Id.* ¶ 7.)  On this day, Plaintiff was "over 70 years old, suffered with a history of heart disease, diabetes, and was not fully ambulatory." (*Id.*)

"Upon noting they had caused [Plaintiff] significant injuries, . . . [D]efendants then handcuffed [Plaintiff] and began discussing what crime(s) they could actually charge [him] with. [Plaintiff] submits this was in an effort to cover for their deliberate[ly] injuring" him. (*Id.* ¶ 8.)

Davis then put Plaintiff in the back of his marked vehicle and took him to the Sheriff's Department. (*Id.* ¶ 9.)  There, Plaintiff "repeatedly asked what he was being charged with[,] and the [D]efendants refused to answer." (*Id.*)  Plaintiff "also plead[ed] with the [D]efendants to take him to the hospital because he was seriously injured." (*Id.*)

After several such requests, Plaintiff was taken to Pointe Coupe General Hospital, where he was treated and released with instructions for a follow up with his healthcare providers immediately. (*Id.* ¶ 10.)  "However, while at the hospital, the defendants electronically sought an Arrest Warrant for [Plaintiff] for one count of speeding and two counts of resisting a Police Officer with Force or Violence." (*Id.*)  A Judge signed the warrant on June 12, 2019. (*Id.*)

Defendants next took Plaintiff back to the Sheriff's Department and booked him into jail. (*Id.* ¶ 11.)  He "bonded out and was later released." (*Id.*)  He then sought further medical treatment. (*Id.* ¶ 12.)

Plaintiff alleges that, "[a]s a result of the application of clearly excessive force **while [Plaintiff] was not and had ceased resisting the defendants**, Plaintiff sustained severe injuries to his groin resulting in a permanent loss of gait and function," as well as a "head injury which caused and continues to cause brain damage," among other injuries. (*Id.* ¶ 13 (emphasis in original).)

Plaintiff asserts a claim under 42 U.S.C. § 1983 for excessive force.  (*Id.* ¶ 16.)  He pleads:

> **At all times pertinent hereto**, [Plaintiff] shows that he enjoyed clearly established rights of **bodily integrity and** to be free from the imposition of clearly excessive force **while he was not and/or had ceased resisting**, guaranteed to him pursuant to the United States and Louisiana Constitutions. [Plaintiff] contends defendants Roy and Davis violated his clearly established rights **while he was not and/or had ceased resisting** and are thus liable unto [Plaintiff] pursuant to 42 U.S.C. §1983, for which he sues for herein.

(*Id.* ¶ 16 (emphasis in original).)  The *Amended Complaint* further states:

> [Plaintiff] shows that he was acquitted of the charge of speeding, **the underlying charge which served as the alleged basis for defendants' initial stop of [Plaintiff],** and one count of Resisting an Officer. He shows that he was convicted of one count of Resisting an Officer **for not immediately giving officers his information**, all as more fully demonstrated in the record of the proceeding entitled: "*State of Louisiana v. Joseph R. Martin*." **However, [Plaintiff's] conviction is separate and apart from defendants' subsequent tortious conduct and excessive force after [Plaintiff] was no longer resisting. Defendants' tortious conduct and excessive force is temporally and conceptually distinct from any prior resistance of defendants by [Plaintiff], which ended after [Plaintiff] reached for his glove box and complied with the officers. [Plaintiff] was not and was no longer resisting at the time he was injured by defendants.**

(*Id.* ¶ 18 (emphasis in original).)

## B.  The Underlying Criminal Proceeding

Additionally, Defendants submit the transcript of Plaintiff's December 12, 2019, misdemeanor trial. (Doc. 22-2.)  At the trial, Plaintiff testified that, after they pulled him to the side of the road, one of the officers said he was "going to fix" Plaintiff. (*Id.* at 43.)  According to his testimony, Plaintiff "was sitting in the car, and then they asked me, [']Show me – show me your registration and proof of insurance.['] " (*Id.*)  Plaintiff declared that, when he "reached over to get [his] registration, and they grabbed [him] . . . by the foot." (*Id.*)  Plaintiff again reiterated, "when they pulled [him] out [of] the car," he "was reaching on [sic] [his] . . . registration." (*Id.* at 44.)  Plaintiff said he "leaned over to get it out of [his] glove compartment, and they grabbed [his]

4

legs, both officers" and "put [him] out the truck[] and . . . drug [him] all the way to the . . .
pavement." (*Id.*)

Plaintiff was specifically asked, "did you at any time refuse[] to do anything the officers
asked you to do?" (*Id.* at 46.)  He replied, "Never, never.  And they never read me my rights until
I got to the police station." (*Id.*)

The judge stated that his "only decision here . . . [was] whether there was a resistance"
under La. R.S. 14:108.  (Doc. 22-2 at 58.)  This statute provides in relevant part:

> Resisting an officer is the intentional interference with, opposition
> or resistance to, or obstruction of an individual acting in his official
> capacity and authorized by law to make a lawful arrest [or] lawful
> detention, . . .  when the offender knows or has reason to know that
> the person arresting [or] detaining . . . is acting in his official
> capacity. . . .
>
> The phrase "obstruction of" as used herein shall, in addition to its
> common meaning, signification, and connotation mean . . . (c)
> Refusal by the arrested or detained party to give his name and make
> his identity known to the arresting or detaining officer or providing
> false information regarding the identity of such party to the officer.

*Id.* § 14:108(A), (B)(1)(c).

The Court found Plaintiff guilty of resisting. (Doc. 22-2 at 59.)  The judge found the
question of whether there was excessive force "irrelevant to this case" and instead focused on the
fact that Plaintiff "fail[ed] to give his name and address" after Defendants identified themselves as
law enforcement officers. (*Id.*)  "If the officer thought he observed a crime, then I think he has a
right to stop him, and . . . what happened after he refused to give the information whether the
officer got mad and there was excessive force used is irrelevant to this case." (*Id.*)  The court found
him "guilty of resisting, failing to give his name and address and information when requested."
(*Id.* at 59–60.)

### C.  Court's Prior Ruling on Defendants' Original Motion

On March 18, 2021, the Court granted Defendants' motion to dismiss Plaintiff's original verified *Petition*. (Doc. 19.)  The Court gave an extensive discussion of *Heck v. Humphrey*, 512 U.S. 477 (1994) and first found that Plaintiff's false arrest claim was barred by that case. *Martin v. Roy*, No. 20-339, 2021 WL 1080933, at *7–11 (M.D. La. Mar. 18, 2021) (deGravelles, J.).

The Court then turned to Plaintiff's excessive force claim. *Id.* at *11.  The Court provided the law for *Heck* and these claims and then summarized the standard as follows:

> [T]o avoid dismissal under *Heck*, a plaintiff must clear two hurdles. First, the allegations in his Complaint must not be inherently inconsistent with his resisting arrest conviction; in other words, the plaintiff must not allege absolute innocence throughout the arrest encounter because such a position would necessarily be contradicted by his subsequent conviction. [*Williams v. Town of Delhi*, No. 14-00043, 2015 WL 868746, at *4 (W.D. La. Feb. 27, 2015)]. Second, only after overcoming the first hurdle, he must generate factual issues that: (1) his arrest occurred in divisible stages, and (2) the officer exerted excessive force after he was restrained and compliant. *Id.*

*Id.*  This Court found that Plaintiff failed to satisfy either part of the test:

> . . . Plaintiff cannot clear the first hurdle because the allegations in his Petition contradict his conviction. The Petition alleges that upon being asked for his license and registration by Defendant Roy:
>
> > [Plaintiff] reached over to his glove box on the passenger side of the truck, [when] suddenly and without warning and while shouting, words to the effect, "I'll show you", both defendants opened the driver's side door to Petitioner's truck, forcibly pulled Petitioner out of his truck, with one officer grabbing one of Petitioner's legs and the other officer grabbing Petitioner's other leg, both defendants then deliberately yanked Petitioner's legs apart causing a serious groin injury, pulled Petitioner out onto the ground causing cuts and abrasions on Petitioner's back from the asphalt, and slamming Petitioner's head to the ground and causing Petitioner to momentarily lose consciousness.

6

(*Pet.*, Doc. 1-1 at ¶ 6.)

> Thereafter, Defendant was handcuffed, placed in the back of
> Defendant Davis's police car, and transported to the Sherriff's
> Department. (*Id*. ¶¶ 8–9.) In effect, Plaintiff's allegations are that he
> did not resist arrest, but was instead attempting to comply with the
> officers' orders when he was attacked by the officers for no reason.

> Additionally, at no point in his Petition does he allege that his claims
> of excessive force are separable from his resisting arrest. He does
> not allege that the arrest occurred in divisible stages. Instead, the
> Petition presents the excessive force claim as one single violent
> encounter to which Plaintiff was wholly innocent.

> Thus, contrary to Plaintiff's position, the factual basis for the
> Resisting an Officer conviction is not temporally and conceptually
> distinct from the excessive force claim. (Doc. 9 at 7–11) (citing
> *Bush*); *cf.* [*Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008)]
> ("Because Bush has produced evidence that the alleged excessive
> force occurred *after* she stopped resisting arrest, and the fact
> findings essential to her criminal conviction are not inherently at
> odds with this claim, a favorable verdict on her excessive force
> claims will not undermine her criminal conviction." (emphasis
> added)).

*Id.* at *12–13 (footnote omitted).

## II.    Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the

pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a

complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v.

City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has

explained:

> The complaint (1) on its face (2) must contain enough factual matter
> (taken as true) (3) to raise a reasonable hope or expectation (4) that
> discovery will reveal relevant evidence of each element of a claim.
> "Asking for [such] plausible grounds to infer [the element of a

7

claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, 55[0] U.S. at 556 [ ]. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556 [ ].

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). The Court "need not, however, accept the plaintiff's legal conclusions as true." *Id.* at 502–03 (citing *Iqbal*, 556 U.S. at 678). The task of the Court is not to decide if the

plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503 (cleaned up).

Additionally,

> [i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201.

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005)). Thus, the Court can take judicial notice of public records like the criminal trial transcript. *See Frampton v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 21-362, 2022 WL 90238, at *6 (M.D. La. Jan. 7, 2022) (deGravelles, J.) (taking judicial notice of court record (citing *Fetty v. La. State Bd. of Priv. Sec. Exam'rs*, No. 18-517, 2020 WL 448231, at *8 (M.D. La. Jan. 28, 2020) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (quoting *Norris*, 500 F.3d at 461 n.9)); *Duncan v. Heinrich*, 591 B.R. 652, 655 (M.D. La. 2018) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice.") (internal citations omitted))).

## III.  Discussion

### A.  Parties' Arguments

Defendants assert that Plaintiff's excessive force claims are barred by *Heck*. (Doc. 22-1 at 5.) "Plaintiff attempts to cure these deficiencies by making conclusory allegations not supported by the facts as alleged in his original verified petition, or the sworn testimony of Plaintiff in the criminal trial, or even his amended complaint." (*Id.* at 9.) As to the original sworn petition, Plaintiff previously alleged that the use of force happened "when" Plaintiff reached for the glove

box and that it occurred "suddenly and without warning." (*Id.* (quoting Doc. 1-1 at 4 ¶ 6); *see also id.* at 12 (citing Doc. 1-1 at 12 ¶ 6).) Defendants point to new language from the *Amended Complaint* that is inconsistent with this prior statement. (*Id.* at 9.) Defendants also emphasize that Plaintiff fails to allege facts to support the conclusion that he did not provide his identification, and his position is actually that he did not resist. (*Id.* at 10.) Further, according to the criminal trial transcript (which the Court can consider, and which trumps the operative complaint in the event of a conflict), Plaintiff said he did nothing wrong and immediately tried to comply with the officers. (*Id.* at 10–12 (citing Doc. 22-2 at 43–44, 46).) Consequently, Plaintiff's excessive force claim should be dismissed. (*Id.* at 17.)[1]

Plaintiff responds that he has cured the deficiencies of the prior complaint. (Doc. 26 at 5.) Plaintiff argues that the "sole basis" for the Court's prior ruling was that Plaintiff failed to allege that his excessive force claim was "separable from his resisting arrest" and "occurred in divisible stages," but "[t]his defect is cured." (*Id.* at 6 (citing *Am. Compl.* ¶¶ 6, 6a, 18, Doc. 20).) Plaintiff alleges that "he was not resisting and/or ceased resisting after he reached over to his glove box" and "that only after he reached over to his glove box and stopped resisting" did the excessive force occur. (*Id.* at 6–7.) Plaintiff points to a number of cases on this issue, including one from the Middle District of Louisiana that was released shortly after this Court's prior ruling. (*Id.* at 7–8 & n.22 (citing, *inter alia*, *Gray v. City of Denham Springs*, No. 19-889, 2021 WL 1187076 (M.D. La. Mar. 29, 2021) (Jackson, J.)).)

Further, Plaintiff argues that he does not claim to be "completely innocent"; to the contrary, the *Amended Complaint* pleads that Plaintiff "stopped resisting and reached over to his glove box" before any excessive force occurred. (*Id.* at 9.) Plaintiff notes, "Defendants' reliance on the

---

[1] Defendants make an alternative argument that Plaintiff's claims should be dismissed due to qualified immunity. (Doc. 22 at 2.) Because this ruling rests solely on *Heck*, the Court declines to address Defendants' other argument.

criminal transcript is misplaced. *Heck* is only applicable if the civil claims invalidate the criminal conviction – not the specific testimony of the parties or defenses." (*Id.* at 9 n.29.)  In fact, according to Plaintiff, the criminal transcript supports Plaintiff because it shows that his resistance occurred when he refused to give Defendants his name and license, whereas the excessive force occurred after. (*Id.* at 9.)  Lastly, all of the authority previously relied upon by the Court is distinguishable because Plaintiff is not maintaining his innocence and because this case does not involve a single encounter. (*Id.* at 10.)

Defendants reply:

> Plaintiff does not allege any additional *facts* to suggest that his excessive force claim is "temporally or conceptually" separable from his resisting arrest conviction. Plaintiff does not allege any *facts* to suggest that he is claiming that he ever resisted by refusing to give the deputies his identification. Plaintiff relies on conclusory/alternative language that he added to his amended complaint in an attempt to cure the defects noted by this Court.  This Court should not give the assumption of truth to conclusions.

(Doc. 27 at 2 (emphasis in original).)  Defendants then detail the allegations of the various pleadings. (*Id.* at 2–4.)

Further, Defendants argue that the *Amended Complaint* makes clear that Plaintiff is still asserting that he was completely innocent during the entire encounter with Defendants, and that his pleading provides no new facts to "suggest that he ever resisted arrest." (*Id.* at 4.)  "Rather, Plaintiff's factual allegations suggest that he committed no offense and was instead unjustly victimized for no reason." (*Id.*)  Defendants maintain that the criminal trial transcript supports them:

> The Defendants cited Plaintiff's testimony in the criminal proceeding which was, in effect, that he did nothing wrong, that he never refused to do anything the officers asked him, and that he immediately attempted to comply with the officers' request for his identification by reaching for his glove box to get his registration

11

> when the Defendants forcibly pulled him from the vehicle.
> Plaintiff's testimony at his criminal trial is similar to the *factual*
> allegations in his amended complaint, if not his
> alternative/conclusory allegations. However, if this Court were to
> determine that there is a conflict between Plaintiff's sworn
> testimony at his criminal trial, the transcript of which was referenced
> in his amended complaint, and Plaintiff's allegations in his amended
> complaint, the transcript of his criminal trial controls.  The alleged
> facts contained in the incorporated record from the criminal
> proceeding, that Martin did not at any time refuse to do anything the
> officers asked him to do are controlling over the alternative
> conclusory language Plaintiff added to his amended complaint.

(*Id.* at 4–5 (emphasis in original).)

Defendant's final argument is that Plaintiff's authority is distinguishable: "Unlike in this case, the cases cited by Plaintiff involve facts in which the conviction was separate and apart from the alleged constitutional violation and/or plaintiffs in those cases do not allege facts to suggest that they were innocent of any criminal violation, like Plaintiff does in this case." (*Id.* at 5.) Defendants then close by urging dismissal.

### B.  Applicable Law

"*Heck* prohibits suit under § 1983 if success on the claim would necessarily imply that a prior conviction or sentence is invalid." *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir.) (citing *Heck*, 512 U.S. at 486–87), *cert. denied*, 141 S. Ct. 567 (2020). "The only way to proceed on a § 1983 claim under such circumstances is if the prior conviction is 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Id.* (quoting *Heck*, 512 U.S. at 487).  *Aucoin* explained the policies underlying *Heck*:

> [C]ourts are wary of duplicative litigation and the potential for
> conflicting judgments. As *Heck* observed, the Supreme Court "has
> generally declined to expand opportunities for collateral attack," due
> to longstanding "concerns for finality and consistency," as well as
> the "hoary principle that civil tort actions are not appropriate

12

> vehicles for challenging the validity of outstanding criminal judgments." [512 U.S.] at 485–86, 114 S. Ct. 2364. So if an individual objects to the results of a prior proceeding, the proper avenue for relief is an authorized appeal in *that* proceeding—not an end-run through § 1983.

*Id.* (emphasis in original). "But if the 'plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff,' the claim implicates none of these concerns and may therefore proceed." *Id.* (quoting *Heck*, 512 U.S. at 487 (emphasis added by *Aucoin*)).

"Determining whether the § 1983 claim challenges the conviction is 'fact-intensive, requiring us to focus on whether success on the . . . claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.' " *Id.* (quoting *Bush*, 513 F.3d at 497). The issue depends upon whether "the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim." *Bush*, 513 F.3d at 498.

"Put simply, there is no *Heck* bar if the alleged violation occurs 'after' the cessation of the plaintiff's misconduct that gave rise to his prior conviction." *Aucoin*, 958 F.3d at 382. That is, "[a] claim that excessive force occurred after the arrestee[s] ha[d] ceased [their] resistance [does] not necessarily imply the invalidity of a conviction for the earlier resistance." *Thomas v. Pohlmann*, 681 F. App'x 401, 407 (5th Cir. 2017) (per curiam) (quoting *Bush*, 513 F.3d at 498)).

Additionally, "a claim is barred by *Heck* if the plaintiff's factual allegations supporting the claim are necessarily inconsistent with the validity of the conviction." *Aucoin*, 958 F.3d at 383 (citing *Bush*, 513 F.3d at 497; *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656–57 (5th Cir. 2007)). "[W]hen a plaintiff's claim 'is based solely on his assertions that he . . . did nothing wrong, and was attacked by the [ ] officers for no reason,' that suit 'squarely challenges the factual

13

determination that underlies his conviction' and is necessarily at odds with the conviction." *Id.* (quoting *Walker v. Munsell*, 281 F. App'x 388, 390 (5th Cir. 2008) (per curiam)).  Thus, when a plaintiff "insist[s], in other words, that he is wholly blameless for the use of force against him . . . [i]t is precisely this 'type of claim that is barred by *Heck* in our circuit.' " *Id.* (quoting *Walker*, 281 F. App'x at 390).

In sum, to avoid dismissal under *Heck*, a plaintiff must clear two hurdles.  First, the allegations in his *Amended Complaint* "must not be inherently inconsistent with his resisting arrest conviction;" that is, Plaintiff "must not allege absolute innocence throughout the arrest encounter because such a position would necessarily contravene his subsequent conviction." *Williams*, 2015 WL 868746, at *4.  "Second, only after overcoming the first hurdle, he must" sufficiently allege that: "(1) his arrest occurred in divisible stages," and (2) Roy and Davis "exerted excessive force after [Plaintiff] was restrained and compliant." *Id.*

### C.  Analysis

Having carefully considered the matter, the Court will grant the motion to dismiss.  In short, Plaintiff satisfies neither *Heck* requirement summarized by *Williams*.

#### 1. Absolute Innocence

As to the first requirement, the transcript of the criminal trial demonstrates that Plaintiff maintains his innocence throughout the arrest encounter. (*See* Doc. 22-2.)  Plaintiff testified that the officers asked him for his registration, that he reached over to get it, and they grabbed him by the feet. (Doc. 22-2 at 43.)  Plaintiff was specifically asked at the trial, "did you at any time refuse[] to do anything the officers asked you to do?" (*Id.* at 46.)  He replied, "Never, never." (*Id.*)  These admissions undeniably show that Plaintiff takes the position that he is "wholly blameless," "did

14

nothing wrong, and was attacked by the [ ] officers for no reason," all of which are "necessarily at odds with [his] conviction." *Aucoin*, 958 F.3d at 383. Thus, Plaintiff's claim is barred by *Heck*.

Plaintiff argues that he has cured the deficiencies of his prior complaint and that his past position on innocence is not controlling, but the Court agrees with Defendants. The transcript reflects Plaintiff's position on his innocence because, "in case of a conflict between the allegations in a complaint and the exhibits attached to the complaint, the exhibits control." *Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011) (per curiam) (cleaned up); *see also id.* at 914 (considering "administrative materials" (medical records) in dismissing a claim for deliberate indifference to serious medical needs). Thus, even assuming that the *Amended Complaint* had sufficiently removed the problematic allegations (which is questionable),[2] the transcript defeats Plaintiff's claim.

In sum, the Court finds that Plaintiff fails to clear the first *Heck* hurdle because he maintains his innocence throughout the entire encounter with Defendants. On this ground alone, Plaintiff's claim could be dismissed. *See Williams*, 2015 WL 868746, at *5 (finding plaintiff could not clear first *Heck* requirement where plaintiff alleged he "complied and obeyed *all* of the [officer's] commands when" the officer then assaulted him because "[t]he statement [was] absolute and [could] be interpreted in only one way: [plaintiff] assert[ed] complete innocence throughout the entire arrest episode, not merely in a discrete part of it."); *Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 286–87 (5th Cir. 2013) (per curiam) (holding that *Heck* precluded plaintiff from proceeding on her excessive force claim solely on the basis that plaintiff alleged complete

---

[2] The Court notes that it reached the same conclusion in response to Plaintiff's earlier *verified* complaint, which presumably also articulated Plaintiff's version of what happened. (*See* Doc. 19 at 20; Doc. 1-1 at 3–8.) The Court does not, however, base its ruling on this ground.

innocence in her complaint, which was necessarily inconsistent with the validity of her subsequent resisting arrest conviction).

### 2. Temporal and Conceptual Distinction

Additionally, again, even if Plaintiff had not maintained absolute innocence through the entire encounter, he can only overcome *Heck* if he establishes that: "(1) his arrest occurred in divisible stages," and (2) the officers "exerted excessive force after [Plaintiff] was restrained and compliant." *Williams*, 2015 WL 868746, at *4. He has failed to do so.

Plaintiff attempts to argue his arrest occurred in divisible stages—(1) when he was "resisting" Defendants by not providing his identification, and (2) when he was no longer resisting and was compliant—but Plaintiff's argument is largely based on conclusory allegations.[3] When the *Amended Complaint* is stripped of all conclusory allegations about "ceas[ing] any resistance" and "compl[ying] with the officers," there is only a single fact alleged separating these points in time: Plaintiff reaching to the glove box to get his identification. (*See Am. Compl.* ¶¶ 6, 6a, 18, Doc. 20.) But Plaintiff never alleges that he communicated his intent to comply to the officer. Thus, as alleged, Plaintiff's resisting conduct happened almost immediately with (and nearly at the same time as) the use of force.

Further, the transcript also betrays Plaintiff's position. At the criminal trial, Plaintiff testified that, "when they pulled [him] out the car," he "was reaching on [sic] his . . . registration." (Doc. 22-2 at 44.) Plaintiff said he "leaned over to get it out of [his] glove compartment, and [Defendants] grabbed [his] legs, both officers" and "put [him] out [of] the truck[] and . . . drug

---

[3] The operative complaint states, "[Plaintiff] was not resisting the defendants after he reached over to his glove box and complied. After [Plaintiff] ceased any resistance, defendants then shouted[,] 'I'll show you', opened the driver's side door to [Plaintiff]'s truck, and forcibly pulled [Plaintiff] out of his truck[.] . . ." (*Am. Compl.* ¶ 6a, Doc. 20 (emphasis omitted).) Further, Plaintiff pleads, "Defendants' tortious conduct and excessive force is temporally and conceptually distinct from any prior resistance of defendants by [Plaintiff], which ended after [Plaintiff] reached for his glove box and complied with the officers. [Plaintiff] was not and was no longer resisting at the time he was injured by defendants." (*Id.* ¶ 18 (emphasis omitted).)

[him] all the way to the . . . pavement." (*Id.*)  Accordingly, the transcript (which again controls) demonstrates that the facts underlying the conviction were virtually contemporaneous with the alleged use of force.

This is insufficient to overcome *Heck*; those cases allowing excessive force claims to proceed involve a much greater difference in time and place between the use of force and the circumstances of the offense.  For example, in *Thomas*, the Fifth Circuit found that "at least a portion of [plaintiffs'] excessive force claim [was] 'temporally and conceptually distinct' from their conviction for resisting an officer" because "their conviction relates to the events of their arrest that occurred in the Dollar General parking lot, while the claim relates to events that occurred after they were jailed in the St. Bernard Parish Jail." 681 F. App'x at 407 (citing *Bush*, 513 F.3d at 498).  "In other words, [plaintiffs] allege that they were subjected to excessive force *after* they stopped resisting arrest." *Id.* (citing *Bush*, 513 F.3d at 500).  Thus, the excessive force claim was not barred by *Heck*. *Id.*

Likewise, in *Aucoin*, the Fifth Circuit found that some claims were barred by *Heck* and others were not. There, the plaintiff inmate had obstructed a surveillance camera in his cell, and guards allegedly " 'snuck up' on him and sprayed him with chemical agent." *Aucoin*, 958 F.3d at 381. He was then allegedly taken to the showers (where he was "maced") and brought to the prison lobby (where he was "beat" and "kicked"). *Id.*  "At a subsequent prison disciplinary proceeding, Aucoin was found guilty of defiance, aggravated disobedience, and property destruction for misconduct in his cell. But his misconduct ceased while he was in his cell." *Id.*  The Fifth Circuit found that "*Heck* bars his § 1983 claim as to the alleged use of force in his cell—but not as to the alleged use of force in the prison lobby and shower." *Id.*  *Aucoin* noted: "The officers have not suggested, and the prison disciplinary hearing made no finding, that Aucoin was defiant or

disobedient while in the showers or lobby. Had he been resisting *throughout* the encounter, this would be a wholly different case." *Id.* at 384 n.1 (emphasis in original).

This case is a far cry from *Thomas* and the surviving *Aucoin* claims. In *Thomas*, force was applied in a completely different location than the arrest. 681 F. App'x at 407. Likewise, in *Aucoin*, plaintiff's surviving claims occurred in completely different parts of the prison; Aucoin had "challenge[d] the exercise of force distinct and isolated from the facts leading to the disciplinary conviction." *Aucoin*, 958 F.3d at 384. Here, conversely, Plaintiff's alleged compliance occurred *seconds after or possibly at the same time as the underlying misconduct in the very same location*. Thus, this case is much different than *Thomas* and *Aucoin*.

Rather, the instant suit is much closer to those cases which have found that claims were not divisible. For example, in *DeLeon*, plaintiff alleged that an officer had used excessive force on him, that they got into a fight in which plaintiff acted in self-defense, that the officer shot at plaintiff at least four times, that plaintiff fell, and that the officer then fired again at the unarmed plaintiff. 488 F.3d at 651. Plaintiff pled guilty to aggravated assault of a police officer and received a deferred adjudication, which was a conviction for purposes of *Heck*. *Id.* at 651–52.

The Fifth Circuit affirmed the dismissal of the excessive force claim. *Id.* at 656–57. The Fifth Circuit found that plaintiff's complaint "bel[ied] any suggestion on appeal that he ha[d] accepted his 'conviction' for aggravated assault, and challenge[d] only the shooting." *Id.* at 657. Rather, the complaint alleged a "single violent encounter, throughout which [the officer] used excessive force" on the "innocent" plaintiff, and implicitly challenged his aggravated assault conviction. *Id.* at 656–57. Thus, *Heck* precluded the claim. *Id.*

Plaintiff's position here is even weaker than in *DeLeon*. Here, there is nothing as distinctive as Plaintiff being shot and then being prone on the ground. Again, the transcript

demonstrates that the use of force was contemporaneous with the underlying conduct for which he was found guilty. Consequently, nothing in the *Amended Complaint* shows that this case involves anything other than a "single violent encounter throughout which [Defendants] used excessive force," *id.*, and Plaintiff's claim is thus barred by *Heck*. *See also Price v. City of Rayne*, No. 13-0790, 2016 WL 866945, at *5 (W.D. La. Mar. 3, 2016) (dismissing excessive force claim as *Heck* barred because plaintiff's claim of innocence "relate[d] to the entire encounter and not a distinct temporal or conceptual portion of it; that is, [plaintiff's] claim is directed to the singular event, the use of force during and simultaneously with his arrest, which admittedly stopped immediately after [plaintiff] stopped resisting"). *Cf. Coleman v. Marion Cty.*, No. 14-185, 2015 WL 5098524, at *6 (S.D. Miss. Aug. 31, 2015) (finding no *Heck* bar for plaintiff who fled the police in his vehicle, was shot at by one officer, continued fleeing, struck the car of a second officer, and pled guilty to simple assault on the second officer because "[a] finding that [the first officer] used excessive force in shooting at [plaintiff] before the assault occurred will not call his conviction into doubt.").

Additionally, *Williams* explained that, to overcome *Heck*, a plaintiff must also establish that the officers exerted excessive force after he was restrained and compliant. *Williams*, 2015 WL 868746, at *4. While restraints are not required in every case, *see Curran v. Aleshire*, 67 F. Supp. 3d 741 (E.D. La. 2014), discussed further *infra*, this is, at the very least, a fact courts look at in evaluating whether the force occurred after a plaintiff was compliant. *See Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019) (finding, where a prisoner "was disciplined for '[t]ampering with a locking mechanism or food tray slot' and '[c]reating a [d]isturbance' resulting from his jamming the food-tray slot to his cell and refusing to relinquish it, thereby requiring the use of force by prison officials," that *Heck* did not bar a claim "aris[ing] from the specific force defendants used after he was restrained on his cell floor."); *Bush*, 513 F.3d at 499–500 (holding that an excessive

19

force claim was separable from the plaintiff's resisting arrest conviction because the facts of that case were such that the arrest could be separated into two distinct stages—the first stage consisting of the period when the plaintiff was unrestrained and resistant and the second stage occurring when the plaintiff was handcuffed and compliant).

Here, the *Amended Complaint* fails to offer support on this issue.  There is simply no allegation that Plaintiff was in any way restrained in the vehicle when he leaned over to retrieve his license.  Again, the only *fact* alleged is that he leaned over, without any indication that he communicated his intention to the officers.  Thus, the lack of restraints supports a finding that the excessive force claim is not temporally and conceptually distinct from the factual basis of the conviction.

*Ducksworth v. Rook*, 647 F. App'x 383 (5th Cir. 2016) (per curiam) further illustrates this. There, plaintiff alleged that he was assaulted by several officers in a convenience store parking lot. *Id*. at 384–85. They allegedly shoved him into a truck and then "kicked, punched, and stomped on him as he lay on the ground." *Id.* Plaintiff was convicted of disorderly conduct, assault and battery of a police officer, and resisting arrest. *Id.* The district court dismissed his complaint based on *Heck*. *Id.* The Fifth Circuit affirmed because plaintiff "present[ed] his factual allegations as a 'single violent encounter' with law enforcement during which he was 'an innocent participant.' " *Id.* at 386 (citations omitted).  Plaintiff argued on appeal that *Heck* was no bar "because the officers used excessive force *after* he was restrained," but the Fifth Circuit said "the factual allegations in his complaint tell a different story.  His complaint presents a single narrative of an unprovoked police attack; his 'broad claims of innocence relate to the entire arrest encounter, and not merely a discrete part of it.' " *Id.* (quoting *Daigre*, 549 F. App'x at 287).   The appellate court specifically

noted that plaintiff made "no mention of his conduct[] and offer[ed] no differentiation of his behavior before and after he was restrained." *Id.* Thus, *Heck* barred the excessive force claim. *Id.*

Similar reasoning applies here.  Despite Plaintiff's contentions to the contrary, he has described a "single narrative of an unprovoked police attack," and there is no indication that Plaintiff was in any way restrained at any time during this encounter.  For these additional reasons, Plaintiff's claim will be dismissed. *See Duckworth*, 647 F. App'x at 386; *cf. Tyson v. Lafayette Police Dep't*, No. 19-726, 2020 WL 609822, at *3 (W.D. La. Feb. 6, 2020) (finding, where officer allegedly kicked plaintiff "several times . . . despite [p]laintiff being completely restrained" that plaintiff's "claim[] of excessive force . . .  against [the] [o]fficer . . . [was] separable from his conviction of property damage and disturbing the peace for which he alleges [the officer] had probable cause to arrest him").

### 3. Distinguishing Plaintiff's Cases

Plaintiff relies on a number of other district court cases to support his position.  But each of these is distinguishable in that, unlike the present case, they satisfy the standard summarized by *Williams*.

For example, in *Curran v. Aleshire*, 67 F. Supp. 3d 741 (E.D. La. 2014), the student plaintiff had battered an officer "outside the school auditorium," and, in response, the officer "spun [p]laintiff against the wall and placed handcuffs on her." *Id.* at 749.  "Then, while escorting [p]laintiff to room 402, [the officer] at one point allegedly spun and pushed [the student] against the wall in a hallway." *Id.  Heck* did not bar the excessive force claim because the "[t]wo incidents giving rise to the claims of excessive force allegedly occurred after the completion of the battery of [the officer]." *Id.* at 750.

Here, unlike *Curran*, Plaintiff has not established in clear-cut terms that the excessive force occurred "after the completion of" his underlying offense of resisting.  As explained above, according to the operative complaint, there is only a single fact that allegedly separated the offense conduct from the excessive force: Plaintiff's reaching to his glove box on the passenger side of the truck. (*Am. Compl.* ¶¶ 6, 6a, Doc. 20.)  This happened almost simultaneously with Plaintiff's resisting.  Further, the transcript makes the situation even clearer: by Plaintiff's account, his underlying offense conduct happened contemporaneously with the alleged use of force, and this is the same conduct for which he was found guilty. (*See* Doc. 22-2 at 44–46, 58–60.)  Thus, unlike *Curran*, and contrary to Plaintiff's conclusory allegations and trial testimony, the excessive force did not occur "after the completion of" his resisting offense. This is, as in *Duckworth*, a "single narrative of an unprovoked police attack." 647 F. App'x at 386.

Plaintiff also relies on *Irwin v. Santiago*, No. 19-2926, 2020 WL 1139885 (N.D. Tex. Mar. 9, 2020).  There, plaintiff was driving with his girlfriend's two minor sons. *Id.* at *1.  He approached a red light too quickly, hopped the curb, and drove into the chain-link fence of a cemetery. *Id.*  He "backed his vehicle into the roadway to continue driving home." *Id.*  "As [he] was driving," two officers approached his car, and one ordered him to stop. *Id.*  When plaintiff began to pass the officers, they fired shots into his vehicle and struck plaintiff twice. *Id.*  Plaintiff later pled guilty to one charge of a DWI, one charge of evading arrest, and two charges of abandoning or endangering a child. *Id.* at *2. The DWI conviction included an enhancement that he was operating the vehicle as a deadly weapon. *Id.* at *3.  The Court denied the officers' motion to dismiss on *Heck* on two grounds: (1) there was an absence of evidence indicating the basis for plaintiff's deadly weapon enhancement (that is, it might have been based on endangering the children, endangering the officers, Plaintiff's driving leading up the crash into the fence, or his

conduct after the crash, or all of them together); and (2) plaintiff did not "claim innocence or contradict his convictions," as there were no facts alleged to indicate he did not operate a vehicle while intoxicated, use that vehicle as a deadly weapon, or commit the other crimes. *Id.* at *5–6.

      *Irwin* is also distinguishable in that Plaintiff does provide a basis for his conviction, and his excessive force claim contradicts that basis. Specifically, Plaintiff was convicted of failing to provide his identification to the officers, and Plaintiff's claim—as shown by his trial court testimony—is that he fully complied with the officers and was otherwise innocent throughout the entire encounter, all of which contradicts his conviction. (*See* Doc. 22-2 at 44–46, 58–60.)[4] Thus, *Irwin* does not entitle Plaintiff to relief.

      Lastly, Plaintiff relies on *Gray v. City of Denham Springs*, No. 19-889, 2021 WL 1187076 (M.D. La. Mar. 29, 2021) (Jackson, J.), but that case is easily distinguishable. In *Gray*, plaintiff pled *nolo contendere* to misdemeanor disturbing the peace in violation of La. R.S. 14:103. *Id.* at *8. Judge Jackson explained that plaintiff's claim centered on his "*lawfully and peaceably* recording the traffic stop when the . . . [o]fficers assaulted him and took his phone." *Id.* (emphasis in original). That is, plaintiff's "allegations establish that *prior to* the [o]fficers' alleged assault, [plaintiff] was engaged in constitutionally protected activity, and was not creating any physical or verbal disturbance, or preventing the [o]fficers from doing their jobs, as is required to sustain a conviction for disturbing the peace under § 14:103." *Id.* Consequently, "the predicate facts underlying [plaintiff's] conviction . . . necessarily arose *after* the [o]fficers' alleged assault." *Id.* (emphasis in original). The court concluded, "As such, the alleged facts underlying [plaintiff's] constitutional claims are temporally and conceptually distinct from the facts underlying his

---

[4] It is of no moment that the state court judge declined to comment on whether the force was excessive, as that was "irrelevant" to the issue before the court. (Doc. 22-2 at 59.)

conviction, and a judgment in his favor would not be 'inherently inconsistent' with his conviction." *Id.* (citing, *inter alia*, *Thomas*, 681 F. App'x at 408; *Bush*, 513 F.3d at 499–500).

This case is, of course, markedly different.  The heart of *Gray* is that the "predicate facts underlying [plaintiff's] conviction . . . necessarily arose *after* the [o]fficers' alleged assault." *Id.* (emphasis in original). Conversely, here, the predicate facts underlying Plaintiff's conviction for resisting an officer—that is, his refusal to provide his identification—occurred *virtually contemporaneously with* Defendants' alleged assault.  That is, unlike *Gray*, Plaintiff was *not* "engaged in constitutionally protected activity" or otherwise acting lawfully "*prior to* [Defendant's] alleged assault[.]" *Id.* (emphasis in original). Thus, *Gray* does not save Plaintiff's claim.

In sum, the Court finds that Plaintiff has failed to demonstrate that the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim.  Consequently, Defendants' motion will be granted, and Plaintiff's claims will be dismissed without prejudice.

### D.  Leave to Amend

Federal Rules of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (cleaned up). However, "[l]eave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994 (citation and internal quotation marks omitted)). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including

> "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." [*Jones*, 427 F.3d at 994] (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. and Indent. Co.,* 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." *Id.* (citation and internal quotation marks omitted).

*Id*.

In addition, the Fifth Circuit has made clear that "[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.* (citing *Briggs*, 331 F.3d at 508).

Having carefully considered the matter, the Court will deny leave to amend. First, as stated above, "repeated failures to cure deficiencies by amendments previously allowed" is a factor to consider when granting or denying leave to amend, as is undue delay. *Id.* (citation omitted). Here, Plaintiff had the benefit of the Court's ruling on Defendants' original motion to dismiss, (Doc. 19), yet he failed to cure the deficiencies of the original petition, (Doc. 1-1 at 1–8). Second, even putting this aside, further amendment would be futile; Plaintiff's claims against Defendants remain barred by *Heck,* and no amendment can change that.  As a result, Plaintiff will not be allowed leave to amend. *See Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 679 (M.D. La. 2019) (deGravelles, J.) (denying leave to amend when plaintiff should have had notice of issue from court's ruling on original motion to dismiss, and when further amendment

would be futile); *Skinner v. Ard*, 519 F. Supp. 3d 301, 321–22 (M.D. La. 2021) (deGravelles, J.) (same).

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 22) filed by defendants, Rob Roy, individually and in his official capacity; Chance Davis, individually and in his official capacity; and Beauregard Torres, III, Sheriff of Pointe Coupee Parish, is **GRANTED** and that all claims by Plaintiff Joseph R. Martin against Defendants are **DISMISSED WITHOUT PREJUDICE** to their being asserted again once the *Heck* conditions are met. *See Cook v. City of Tyler*, 974 F.3d 537, 539 (5th Cir. 2020) (per curiam).

Signed in Baton Rouge, Louisiana, on March 25, 2022.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**